United States Bankruptcy Court
Northern District of Illinois
Eastern Division

| | |
|---|---|
| In re:<br>Robert J. Meier,<br><br>                                    Debtor. | Bankruptcy No. 14-bk-10105 |
| Edward Shrock,<br>                                    Plaintiff<br>                  v.<br>Robert J. Meier,<br>                                    Defendant. | Chapter 7<br><br>Adversary No. 14-ap-00403 |
| Baby Supermall LLC<br>                                    Plaintiff<br>                  v.<br>Robert J. Meier,<br>                                    Defendant. | Adversary No. 15-ap-00198<br>(Consolidated for trial) |

## MEMORANDUM OPINION ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs Edward Shrock ("Shrock") and Baby SuperMall LLC ("BSM") brought separate adversary proceedings against the debtor in a Chapter 7 bankruptcy case, Robert J. Meier ("Meier"), in order to determine the dischargeability of the debt owed to each by Meier. The debts alleged stem from common facts pertaining to a period of time when Meier, as managing member of BSM, is claimed to have authorized or directed actions that violated his fiduciary obligations to Shrock, then BSM's minority nonmanaging member, and to BSM. The debts owed to each are alleged to be nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2), (a)(4) and (a)(6). While trial was proceeding in these adversary proceedings, a judgment was entered in state court relating to the same factual matter. The Plaintiffs here then moved for summary judgment.

Shrock's adversary complaint here relies, in part, on findings made in a jury verdict against Meier in state court for violating his fiduciary obligations to Shrock and assessing punitive damages against Meier for such violations. The state court action was pending when the bankruptcy case was filed, and the stay was lifted to allow the state court to make final determination as to liability following the jury verdict. BSM's adversary complaint, in turn, seeks an independent determination that a nondischargeable debt is due to it. BSM seeks to determine Meier's liability for damages on the basis of three theories: breach of

fiduciary duty, fraud, and conversion. After judgment for punitive and compensatory damages was entered in the state court action against Meier for violating his fiduciary duties to Shrock, leave to file motions for summary judgment was sought and granted. The trial in the above captioned adversaries was then suspended.

In moving for summary judgment, Shrock argues that the preclusive effect of a state court judgment in his favor and against Meier resolves all triable issues necessary to determine nondischargeability. Shrock, as assignee of BSM claims, also moved for summary judgment, but the motion filed in the adversary proceeding brought by BSM did not offer an independent rationale. Instead, BSM's motion adopts the same arguments in Shrock's motion. Because the two motions are identical and have been treated by the parties as such, the same discussion and analysis will apply to both motions unless otherwise noted.

For reasons that follow, the motion by Shrock for summary judgment will be granted, in part, as to some of the relief sought in the adversary proceeding brought by him (14-ap-00403). Motion for summary judgment on the complaint filed by BSM (*see* 15-ap-00198) will be entirely denied. Separate orders and a judgment on Shrock's adversary will follow.

## UNCONTESTED FACTS

The facts set forth below are derived from the statement of facts submitted by the parties to the extent they comport with Local Bankruptcy Rule 7056. In assessing each motion for summary judgment, the statements are taken in the light most favorable to the non-movant. Meier's response to the statement of facts and supporting exhibits submitted by the movants have been considered, along with the Plaintiffs' reply and other supplemental filings allowed. Only those portions of the statements and responses that are appropriately presented, supported, and relevant to resolution of the pending motions for summary judgment have been included below. Other documents submitted by the parties in this case were considered, when relevant, and judicial notice of the bankruptcy docket in this case is hereby taken.[1]

---

[1] The record includes pleadings filed in Adversary Proceeding 14-00403 ("Shrock Dkt.") and 15-00198 ("BSM Dkt.") and pleadings, motions, trial transcript, orders and judgment of the State Court Litigation included as exhibits to the Plaintiffs' Statement of Undisputed Material Facts and

## A. Background

In the late 1990s, Shrock and his brother Richard Shrock founded an Internet retailer of baby products by the name of Baby Supermall, Inc. Meier was hired as an accounting and financial consultant for the company in or about 1999. (*See* Answer, Shrock Dkt. #8 ["*Shrock Answer*"], ¶¶ 1, 2; Answer, BSM Dkt. #35 ["*BSM Answer*"], ¶ 7; *see also* Pls.' Stmt. of Undisp. Facts ["*Stmt.*"], Ex. 2 (Answer to Second Am. Comp.) ["*State Answer*"] ¶¶ 10, 11.)

In 2003, Meier purchased a controlling stake in Baby SuperMall, Inc., and the company was reorganized as a manager-managed Illinois limited liability company now known as Baby SuperMall LLC (referred herein as "BSM"). (*See Stmt.* ¶ 3; Def.'s Supp. Resp. to Pls.' Mot. for Summ. J. ["*Supp. Resp.*"] ¶ 3.) Meier became BSM's sole manager in charge of the company's day-to-day operations, and the holder of 70 membership units. Shrock retained 10 membership units, and remained employee of the company responsible for maintaining BSM's web system. (*Stmt.*, Ex. 1 (Second Am. Comp.) ["*State Ct. Comp.*"] ¶ 9; *State Ct. Answer* ¶¶ 10, 11.) Meier and Shrock became BSM's sole members when the remaining 20 units were bought back by the company from Richard. From then on, Meier would own the equivalent of an 87.5% interest and the remaining Shrock 12.5% interest would be held by Shrock.[2] (*See Stmt.* ¶¶ 6, 17; *Supp. Resp.* ¶¶ 6, 17; *BSM Answer* ¶¶ 5, 9; *Shrock Answer* ¶ 4; *State Ct. Answer* ¶¶ 13, 14.)

BSM's operations were governed by the Operating Agreement entered into on October 21, 2003 and signed by Meier and Shrock. The Operating Agreement outlined the parties' respective roles in the company, in their capacities as members and, in Meier's case, as sole manager. (*See Stmt.* ¶ 15; *Id.*, Ex. 1A, Operating Agreement ["*OA*"].) While Meier's incidental powers as manager of BSM were broad, certain acts of governance—including

Supplements thereto. The Statements of Undisputed Facts filed in each adversary are identical (*see* Shrock Dkt. #87, BSM Dkt. # 164), as are all other briefs and documents filed in support of the Plaintiffs' motion for summary judgment. Meier, *pro se*, filed a Response and Supplemental Response to Plaintiffs' Motion for Summary Judgment (*see* BSM Dkt. #181), which incorporates Defendant's response to the Plaintiffs' Statement of Facts. Although Meier's Response was filed only in BSM's adversary docket, it has been viewed by the Plaintiffs as if filed in both adversaries; Plaintiffs filed a Reply and Supplemental Reply to Meier's Response in both BSM and Shrock's adversary dockets.

[2] Shrock bought Meier's 87.5% interest in BSM from the Chapter 7 Trustee in October 2015. (Order Granting Mot. to Approve Settlement (Dkt. #823).)

manager salary increases and amendments to provisions governing salary amount limitations—required the unanimous consent of BSM's members. (*OA* ¶¶ 6.1.3, 10.5, 10.6.) All distributions to holders of membership units were required to be made in proportion to Meier and Shrock's respective share of membership units. (*OA* ¶¶ 5.1, 5.2.) Dealings between members and the company were otherwise required to be at arm's length and in a commercially reasonable manner. (*OA* ¶ 6.4.3.)

1. Meier's Compensation and Profit Sharing Agreements

Meier's initial salary from BSM was limited to $150,000 a year. (*See OA* ¶ 6.1.3; *State Answer* ¶ 27.) In October 2003, Meier executed an agreement between himself and BSM providing, in part, for deferral of such salary until three months of net company profits were achieved (the "Salary Deferral Agreement"). (*Stmt.* ¶ 18; *Id.*, Ex. 1B, Salary Deferral Agreement ["*SDA*"], ¶ 2.) The Salary Deferral Agreement also provided that Meier's would be entitled to payment of a profit sharing percentage, in addition to his initial salary rate, based on the total amount of compensation deferred. (*SDA* ¶¶ 4, 5.) Shrock did not consent to the compensation structure established under the Salary Deferral Agreement, which was executed between Meier and BSM, through Meier as company president. (*Stmt.* ¶ 19; *see SDA*.)

In December 2004, Meier executed another agreement between himself and BSM amending the Salary Deferral Agreement to, among other things, increase his salary from 150,000 to $350,000, retroactive to October 21, 2003. (*Stmt.* ¶ 20; *see Stmt.*, Ex. 1C.) Shrock did not consent to the change in Meier's compensation provided in this amendment to the Salary Deferral Agreement, which was executed by Meier only, individually and on BSM's behalf, as president. (*Stmt.* ¶ 21; *See State Answer* ¶ 33; *Stmt.*, Ex. 1C.)

Between January 2004 and May of 2005, Meier executed five separate agreements between himself and the company pursuant to which Meier agreed to guarantee the company's debt with three credit card companies (Visa, MasterCard and American Express), a bank loan, and obligations under a certain lease agreement. (*See Stmt.* ¶¶ 22-26; *Supp. Resp.* ¶¶ 22-26.) Meier's agreement to guarantee these debts entitled him to additional profit sharing percentages based on the amounts guaranteed. (*See Stmt.*, Grp. Exs. 1D-1–5; *State*

4

*Answer* ¶¶ 53, 54.) Meier did not seek or obtain Shrock's consent in executing the guarantees. (*See State Comp.* ¶ 56; *State Answer* ¶ 56.)

    2.  <u>Third Party Compensation and Incentive Agreements</u>

      In August 2005, Meier hired his then friend (now wife) Silvia Suby as Chief Operating Officer with a salary of $110,000, plus 20% of the company's net profits, among other benefits. (*See Stmt.* ¶¶ 27-28; *Id.*, Grp. Ex. 1E-1; *Supp. Resp.* ¶¶ 27-28.) Meier later executed an Incentive Compensation Agreement between Silvia Suby and BSM in November of 2006 which, among other things, awarded her 20% percentage of the company's profits for the following three years, and entitled her to additional compensation if she was terminated prior to 2008. (*Stmt.*, ¶ 34; *Id.*, Grp. Ex. 1E-3.)

      In October 2005, Meier hired Silvia Suby's son, David Suby, as Vice President of Information Technology with a salary of $120,000. (*Stmt.* ¶¶ 35, 36; *Stmt.*, Grp. Exs. 1F-1–2.) Meier also executed an Incentive Compensation Agreement between BSM and David Suby, which granted David Suby a share of the company's profits for the following three years, including 2008, ranging from 5 to 10% of BSM's annual net profits, among other benefits. (*Stmt.* ¶ 38; *Id.*, Grp. Ex. 1F-3.)

      Between October 2005 and January 2006, Meier made several attempts to purchase Shrock's remaining interest in BSM, but Shrock—a minority, nonmanaging member and employee of BSM at the time—refused to sell his interest in the company. (*see State Answer* ¶ 16.) In December 2005, Meier reduced Shrock's annual salary from 75,000 to $40,000 per year. (*State Ct. Answer* ¶ 20.)

      Between 2006 and 2009, BSM reported gross annual profits of more than $4,000,000, which had increased well beyond $5,000,000 by 2009. (*See Id.* ¶ 112.) While BSM would pay several hundreds of thousands to Meier and others in the form of salaries and profit sharing incentives, distributions to members during the same period were far more limited: Shrock alleged that he received a total amount no greater than $25,000 on account of its membership stake in BSM. (*Id.* ¶ 111; *State Comp.* ¶¶ 110, 111.)

### B. The State Court Action

On February 9, 2009, Shrock filed a complaint against Meier in Circuit Court of Cook County, Illinois, Law Division, seeking damages and other relief for, among other things, fiduciary duty violations and breach of contract. (*See Stmt.* ¶¶ 10, 48; *Supp. Resp.* ¶ 10.) Shrock alleged that Meier's approval of his and other BSM employees' compensation structure and profit sharing incentives diverted profits to himself and others in violation of Meier fiduciary duties to Shrock, and in violation of terms in the Operating Agreement.

Fiduciary duty, as alleged by Shrock in the State court complaint, was said to require "Meier [to] act with the utmost good faith to Shrock." (*State Comp.* ¶ 123.) Moreover, "Meier's acts [were] also unfair. He knowingly disregarded his obligations to Shrock and took actions solely intended to secure further benefits for himself." (*State Comp.* ¶ 129.) These actions were alleged to have been "knowing, intentional and made with complete disregard for the rights of Shrock[.]" (*State Comp.* ¶ 130.)

On May 18, 2010, the State court granted a preliminary injunction barring future payments to Meier and others' under the profit sharing plans implemented by Meier under various agreements between BSM, himself and third parties, which Shrock claimed amounted to continued violations of his rights under the Operating Agreement. (*Stmt.*, Ex. 4 (Order on Pl.'s Mot. Summ. J.) ["*State MSJ*"], at 7-8; *Shrock Answer* ¶ 25.)

On February 22, 2011, Shrock filed his Second Amended Complaint in State court, which included seventeen counts for relief against Meier and other related parties. (*Stmt.* ¶ 13.) The state court dismissed all but four courts against Meier, including Shrock's counts for breach of fiduciary duty and breach of contract, by order dated April 7, 2011. Claims dismissed included fraud, constructive fraud and conversion against Meier, as well as a number of claims against Meier's attorneys and other defendants. (*Stmt.* ¶ 13; *Stmt.*, Ex. 3 (State Ct. Order on Meier's Mot. to Dismiss).)

Meier filed his Answer to the Second Amended Complaint and Affirmative Defenses in State court on April 25, 2011. (*Stmt.* ¶ 14.) At all times mentioned herein during the State Court Litigation, both Shrock and Meier were represented by counsel. (*Stmt.* ¶ 12; *see also Stmt.*, Ex. 8 (State Ct. Appearance of Counsel).)

1. <u>Jury Trial on Fiduciary Duty Violations</u>

Litigation in State court proceeded to trial in front of a jury. After close of the
evidence, the court submitted the case to the jury for determination of liability and damages
for breach of fiduciary duty. (*See Stmt.*, Ex. 6, at 1; *Supp. Resp.* ¶ 10.) In connection with that
determination, the judge instructed the jury, in relevant part, as follows:

> Now, Meier is a fiduciary. As a fiduciary, **he is obligated to act with the
> highest sensitivity, honesty, candor, fairness, good faith, and undivided
> loyalty to Shrock and to the company**.
> Meier's fiduciary obligations also include those outlined in the Illinois Limited
> Liability Act law, and the operating agreements, sections of which will be
> provided to you with these instructions.

(Pls.' Supp. Exs. for Mot. Summ. J., Shrock Dkt. #98 ["*Supp. Exs.*"], at Ex. B, March 5, 2014
Hr'g Tr. ["*Jury Instructions*"] 153:8–15 (emphasis added); *see also Supp. Exs.*, Ex. A, at 135–39
(attaching excepts of Illinois Limited Liability Company Act (the "LLC Act") provisions
supplied, including 810 ILCS 180/1-5, 180/15-5, 180/15-7, 180/1-43.[3])

After discussing Meier's defense of laches, the judge instructed the jury as to
determination of intent once a breach is found and the availability of punitive damages:

---

[3] Excepts provided to the jury included the following definitions in 810 ILCS 1-5:
> "Distribution" means a transfer of money, property, or other benefit from a limited
> liability company to a member in the member's capacity as a member or to a
> transferee of the member's distributional interest.
> "Distributional interest" means all of a member's interest in distributions by the
> limited liability company.
> "Membership interest" means a member's right to receive distributions of the limited
> liability company.

*See Supp. Exs.*, at 135. Also included is a provision governing payment or reimbursement rights of
members and managers. Thereunder, members have a right to reimbursement for advances made or
liabilities incurred for the company's benefit, incurred in the ordinary course of the company's
business; members otherwise have no right to compensation for services provided to the company.
(*See* 810 ILCS 15-7(a)–(d); *Supp. Exs.*, at 138.)
   A third provision supplied sets forth the general rule that an "operating agreement may
modify any provision or provisions of this Act governing relations among members, mangers, and
company" *except* those listed under subpart (b). 810 ILCS 15-5(a). Subsection (b) lists seven types of
invalid provisions, including, one to "eliminate or reduce the obligation of good faith and fair
dealing under subsection (d) of Section 15-3 . . . ." 810 ILCS 15-5(b)(7); *See Supp. Exs.*, at 136–37.
The last provision supplied with the jury instructions specifies that "[u]less displaced by particular
provisions of this Act, the principles of law and equity supplement [sic] this Act." (*Supp. Exs.*, at 139,
citing 810 ILCS 1-43.)

When I use the expression "willful and wanton," I mean a course of **conduct which shows an utter indifference to or conscious disregard of another person's rights**.

Now, the law permits you, under certain circumstances, to award punitive damages. If you find that Mr. Meier's conduct **was fraudulent, intentional, or willful and wanton**, and proximately caused damage to Shrock, and if you believe that justice and public good will require it, you may award an amount of money which will punish Meier and discourage him and others from similar conduct.

In arriving at your decision as to the amount of punitive damages, you should consider the following three questions. The first question is the most important to determine the amount of punitive damages. Question number one, how reprehensible was Meier's conduct. On this subject, you should consider the following: The facts and circumstances of Meier's conduct, the financial vulnerability of Shrock, the duration of the misconduct, the frequency of Meier's misconduct, whether the harm was physical as opposed to economic, and whether Meier tried to conceal the misconduct.

Two, what actual and potential harm did Meier's conduct cause to Shrock in this case? .

Three, what amount of money is necessary to punish Meier and discourage Meier and others from future wrongful conduct.

The amount of punitive damages must be reasonable and in proportion to the actual and potential harm suffered by Shrock.

(*Jury Instructions* 154:4–155:11 (emphasis added).)

The judge proceeded to instruct the jury on the specific transactions claimed by Shrock to amount to fiduciary duty breaches under the Illinois LLC Act and the Operating Agreement. Meier, as a fiduciary under Act and the parties' agreement and an interested party in each transaction, had the burden of proving by clear and convincing evidence that:

i.   The Salary Deferral Agreement was fair and reasonable;
ii.  The Amended Salary Deferral Agreement was fair and reasonable;
iii. The Visa, MasterCard and American Express Guaranty Agreements were fair and reasonable;
iv.  The Loan Guaranty Agreement was fair and reasonable;
v.   The Lease Guaranty Agreement was fair and reasonable;
vi.  That his retroactive salary increase complied with the Operating Agreement.

(*Jury Instructions* 156:1–157:3.)  With respect to those transactions where Meier did not personally benefit, Shrock was required to prove that:

i.   The David Suby Agreement was unfair and unreasonable;
ii.  The Silvia Suby Agreement was unfair and unreasonable.

8

(*Jury Instructions* 157:11–18.)  As to any of the foregoing conduct, the jury would then assess the propriety of punitive damages for fiduciary duty violations by determining whether "Meier's conduct was willful and wanton[.]" (*Jury Instructions* 158:2–5.)

  2.  Jury Verdict Assessing Punitive Damages against Meier for Violating his Fiduciary
      Obligations to Shrock

After deliberation, the jury returned a verdict in favor of Shrock, finding that Meier did breach his fiduciary duties to Shrock. (*Stmt.*, Ex. 6 at 247–49 (Spec. Interrog. & Verdict Sheet) ["*Verdict*"]; *Shrock Answer* ¶¶ 27-28.)  The jury verdict was reached shortly after trial in the State court action was concluded, on March 5, 2014.  The jury also answered Special Interrogatories.

Special Interrogatory 1 asked, "Do you find that Meier violated his fiduciary duties to Shrock?"  The jury answered "yes." (*Verdict* at 247; *Shrock Answer* ¶ 30.)  In response to Special Interrogatory 8, the jury identified period of fiduciary violations as extending between the years of 2003 through 2012. (*Verdict* at 248.)  Special Interrogatory 12 asked, "Did you find that Meier's conduct was willful and wanton?"  Again, the jury answered in the affirmative. (*Verdict* at 248.)  The Jury Verdict was signed by all 12 members of the jury. (*Shrock Answer* ¶ 30; *Verdict* at 249.)

**C. The Bankruptcy Case**

On March 20, 2014, Meier filed a petition for relief under Chapter 11 of the Bankruptcy Code; the case would be converted to one under Chapter 7 of the Bankruptcy Code later that year, in December of 2014.  Shrock's adversary complaint was filed in July of 2014, shortly after the case was filed and before it was converted.  BSM's adversary complaint was filed in March of 2015.

Meier was represented by counsel in the bankruptcy case and related adversaries until September 3, 2015.  He has proceeded *pro se* since then and, with court instructions and individual preparation, has successfully appeared, argued, and submitted all materials scheduled to be filed in these adversaries and in the bankruptcy case, including the pending Motions for Summary Judgment.

1. <u>Shrock v. Meier, 14-ap-00403</u>

On June 23, 2014, Shrock filed his First Amended Adversary Complaint to Determine Dischargeability of Debt Under 11 U.S.C. § 523(a)(2)(A), (a)(4) and (a)(6) ("Shrock's Complaint"). Shrock's Complaint alleged two debts: (1) $10,025,000 in punitive damages assessed by a jury against Meier, shortly before the bankruptcy case was filed, for violating of his fiduciary obligations to Shrock, and; (2) potential "$15 million or so in damages against Meier" that the court was "set to assess" before the bankruptcy case was filed.

In his Answer, filed on July 23, 2014, Meier admitted that punitive damages described were assessed but denied that the trial court was set to assess additional damages $15 million or so in damages. (Shrock Answer, at 1.)

On July 28, 2014, an Order granting relief from the Stay was entered in the bankruptcy case to permit continuation of the State court case and allow the court to enter judgment in that case, among other limited purposes authorized, but expressly barring any act to collect or enforce any judgment and any other act not expressly authorized. (*see* Order Modifying Stay, Dkt. #113)

On January 30, 2015, Final Pretrial Order was entered in the adversary proceedings and, in the absence of a final judgment in State court, trial on Shrock's Complaint was scheduled several months in the future, for several days in October 2015. Deadline for filing dispositive motions was set early in September 2015. (*See* Shrock Dkt. #17.)

2. <u>Baby SuperMall, LLC v. Meier, 15-ap-00198</u>

On March 26, 2015, BSM filed its Adversary Complaint ("BSM's Complaint") against Meier and including common law claims for breach of fiduciary duty, fraud, constructive fraud and conversion under Illinois law, in addition to nondischargeability under §§ 523(a)(2)(A), (a)(4) and (a)(6). BSM's Complaint alleged violations of Meier's fiduciary obligations to BSM between 2003 and until 2012. The relevant conduct included Meier's Salary Deferral Agreement, loan guarantee and other profit sharing agreements, as well as the third party employment and incentive compensation agreements at issue in the State court action and Shrock's Adversary Complaint.

BSM's Complaint also incorporated additional allegations involving purchase of a certain property, referred to as the "James Property," as defined therein, which were not included in Shrock's pleadings. (*See BSM Comp.* ¶¶ 35–42.) BSM sought damages in an amount to be proven at trial and estimated to be no less than $15,000,000. (*See BSM Comp.* ¶¶ 51, 54, 59, 62 (specifying damages under Counts I–IV).) Meier filed an Answer to BSM's Complaint on July 31, 2015. (BSM Dkt. #35.)

    3.  <u>Consolidation and Trial</u>

On September 3, 2015, an Amended Final Pretrial Order was entered, vacating the Final Pretrial Order setting Trial on Shrock's Complaint, and consolidating the related adversary proceedings filed by Shrock and BSM. (*See* BSM Adv. Dkt. #69).

Deadline for filing dispositive motions was reset to November 1, 2015, and trial reset to take place during several days in January of 2016. After trial began here and some evidence was presented, judgment was entered in the State court action against Meier and in favor of Shrock. Trial in the consolidated adversaries was then suspended pending ruling on Motions for Summary Judgment.

## D. State Court Judgment

On January 14, 2016, the State court entered an order adopting the jury findings and incorporating the Special Interrogatories and Verdict Sheet that had been completed by the jury on March 5, 2014. Based upon those findings, the State court entered judgment as to liability against Meier and in favor of Shrock, with final judgment for damages to follow. (*Stmt.*, Ex. 6, State Ct. Order.)

On February 9, 2016, the State court entered a judgment against Meier and in favor of Shrock for damages totaling $11,164,500, which included $1,164,500 in compensatory damages plus $10,000,000 in punitive damages (the "Judgment"). (*Stmt.*, Ex. 7, State Ct. J ["*Judgment*"]).

In calculating compensatory damages, the State court adopted the following findings and conclusions:

1. Total amounts paid to Meier "in bonuses and profit sharing" was $6,000,000, and additional $2,000,000 were accrued;
2. The amount paid to Silvia Suby "in bonus/profit sharing" was $1,550,000;

3.  The amount paid to David Suby "in bonus/profit sharing" was $778,000;

4.  The loan that Meier took from BSM was equal to $998,000.

The specified amounts listed were treated "as distributions which should have entitled [Shrock] to 12.5% pursuant to the operating agreement." (*Judgment*, at 1.) The $2,000,000 identified in numeral one as "accrued" was reversed and Meier was barred from claiming that amount to himself. (*Judgment*, at 2.)

Compensatory damages were calculated as 12.5% of the total amounts listed above (but excluding the accrual) for a total of $1,645,000 in compensatory damages due to Shrock from Meier for fiduciary duty violations.

Damages sought "due to salary deferments, lease, credit card and loan guarantees" were denied for lack of evidence that the guarantees were ever enforced.

The jury's suggested punitive damage amount of $10,000,000 was accepted and adopted, in accordance with the previously adopted jury findings that Meier's conduct was "willful and wanton."

## E. Plaintiffs' Motion for Summary Judgment on Adversary Claims

In light of the State court's Order adopting the jury's finding and subsequent Judgment, the Plaintiffs moved for leave to file a motion for summary judgment (*See* Shrock Dkt. #77; BSM Dkt. #156). Leave was granted (Shrock Dkt. #78; BSM Dkt. #158) and Plaintiffs' Motion for Summary Judgment was filed in both adversaries. (Shrock Dkt. # 86; BSM Dkt. #162.) Plaintiffs argue that determination of factual issues by the State court resolves all triable issues necessary to determine dischargeability as to the debts owed to each. Plaintiffs argue that Meier is estopped from relitigating issues determined in the State court action, and determination of said issues entitles each of the Plaintiffs to judgment on nondischargeability as a matter of law.

In response, Meier argues (1) that the Plaintiffs' Motion is untimely; (2) that the record of the State court proceedings offered by Plaintiffs is insufficient; and (3) that the debts at issue do not meet the elements of the Plaintiffs' nondischargeability claims. (*See* Def.'s Resp. to Pls.' Mot. Summ. J., BSM Dkt. #174 ["*Resp.*"], at 1, 14.)

## DISCUSSION

### I. JURISDICTION AND VENUE

Subject matter jurisdiction lies under 28 U.S.C. § 1334. The district court may refer bankruptcy proceedings to a bankruptcy judge under 28 U.S.C. § 157, and this proceeding was thereby referred here by Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Venue lies under 28 U.S.C. § 1409. These are core proceedings under 28 U.S.C. §§ 157(b)(2)(A), (I) and (O). They seek to determine the dischargeability of debts. Therefore, they "stems from the bankruptcy itself" and may constitutionally be decided by a bankruptcy judge. *Stern v. Marshall*, 131 S.Ct. 2594, 2618 (2011).

### II. SUMMARY JUDGMENT

"A motion for summary judgment is a contention that the material facts are undisputed and the movant is entitled to judgment as a matter of law." *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015); *see* Fed. R. Civ. P. 56(a) (made applicable to adversary proceedings by Fed. R. Bankr. P. 7056). "[A] party seeking summary judgment always bears the initial responsibility of informing the ... court of the basis for its motion, and ... [must] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *See* Fed. R. Civ. P. 56(a) & (c)(1). "Where . . . the movant is seeking summary judgment on a claim as to which it bears the burden of proof, it must lay out the elements of the claim, cite the facts which it believes satisfies these elements, and demonstrate why the record is so one-sided as to rule out the prospect of a finding in favor of the non-movant on the claim." *Hotel 71 Mezz Lender*, 778 F.3d at 601.

If the initial burden is met, the non-moving party must demonstrate a genuine issue for trial. Fed. R. Civ. P. 56(a). "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial" through affidavits or other supporting evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (internal quotation marks omitted); Fed. R. Civ. P. 56(c) & (e).

In ruling on a motion for summary judgment, courts must evaluate admissible evidence in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255. A motion for summary judgment may generally be brought by any party at any time unless the court orders otherwise. *See* Fed. R. Civ. P. 56(b).

## A. Timeliness of Plaintiffs' Motion

Meier argues that the Plaintiffs' Motion for Summary Judgment should be denied because it was barred by the Final Pretrial Order entered in this case. It is undisputed that the Motion was brought late. However, leave to file Motion for Summary Judgment was promptly sought by the Plaintiffs, and such leave was granted. Under these circumstances, Plaintiffs' Motion was no longer barred and is properly brought for consideration.

A final pretrial order controls the subsequent course of the action *unless* modified by a subsequent order. *Ryan v. Illinois Dep't of Children & Family Servs.*, 185 F.3d 751, 763 (7th Cir. 1999) (internal quotations omitted) (emphasis added). Federal Rule of Civil Procedure 16, incorporated by Bankruptcy Rule 7016, allows the modification of pretrial orders. *See* Fed. R. Bankr. P. 7016(e). The Seventh Circuit has provided further guidance in amending pretrial orders. Trial courts "should consider points like (1) the prejudice or surprise to the nonmoving party, (2) the ability of the party to cure the prejudice, (3) the extent of the disruption to the orderly and efficient trial of the case or other cases in the court, and (4) the bad faith and willfulness in failing to comply with the court's order." *Ryan*, 185 F.3d at 763.

In this case, Plaintiffs' motions for leave to file their Motion for Summary Judgment was granted in light of the new State Court Order and Judgment. There was no prejudice or surprise to Meier. Meier was a party to the ongoing State Court Litigation and was aware of the State Court Order and that the Judgment. Nor has bad faith or willfulness in failing to comply with the pretrial order been alleged or is apparent in this case. Plaintiffs sought leave to file their Motion within days of the State court's January 14, 2016 Order adopting the findings of the jury and assessing liability based on such findings. Plaintiffs filed their motion for leave on January 18, 2016, citing the January 14 Order, and have filed all materials in support of their Motion for Summary Judgment without delay.

Any disruption to proceeding in this court was minimal. Because the factual issues litigated in the State Court Litigation are the same, potential duplication of a repeat trial was avoided. Plaintiffs sought and obtained leave to file their Motions, and leave was granted. Under these circumstances, Plaintiffs' Motions for Summary Judgment were properly filed and allowed.

## B. Collateral Estoppel

Plaintiffs argue that the State court's Order adopting the jury findings and the subsequent Judgment against Meier establishes all factual issues necessary to determine nondischargeability of the debts assertedly owed by Meier to the Plaintiffs under 11 U.S.C. §§ 523(a)(2)(A), (a)(4) and (a)(6). A state court judgment is entitled to the same preclusive effect in federal court as that judgment would have in state court. *Allen v. McCurry*, 449 U.S. 90, 96 (1980); *see* 28 U.S.C. § 1738. This rule applies with equal force in bankruptcy cases. *First Weber Group, Inc. v. Horsfall*, 738 F.3d 767, 772 (7th Cir. 2013); *see also Grogan v. Garner*, 498 U.S. 279. n.11 (1991). Because the judgment in this case was rendered by an Illinois state court, Illinois collateral estoppel law governs. *Gambino v. Koonce*, 757 F.3d 604, 608 (7th Cir. 2014).

Seventh Circuit authority has affirmed the application of collateral estoppel in an effort to bar a debt from discharge. *Klingman v. Levinson*, 831 F.2d 1292, 1294-95 (7th Cir. 1987). *Klingman* analyzed nondischargeability of a debt under § 523(a)(4), for defalcation while acting in a fiduciary capacity. In *Klingman*, the court found that "where a state court determines factual questions using the same standards as the bankruptcy court would use, collateral estoppel should be applied to promote judicial economy by encouraging the parties to present their strongest arguments." *Id.* at 1295.

The *Klingman* court outlined four elements that must be met in order for the collateral estoppel doctrine to be applicable: (1) the issue sought to be precluded must be the same as that involved in the prior action; (2) the issue must have been actually litigated; (3) the determination must have been essential to the final judgment; and, (4) the party against whom estoppel is invoked must have been fully represented in the prior action. *Klingman*, 831 F.2d at 1295; *See also Gambino v. Koonce*, 757 F.3d 604, 608 (7th Cir. 2014); *Am. Family*

*Mut. Ins. Co. v. Savickas*, 739 N.E.2d 445, 451 (Ill. 2000). Whether the doctrine of collateral estoppel is applicable in a particular case is a question of law. *State Building Venture v. O'Donnell*, 940 N.E.2d 1122, 1126 (Ill. 2010). "While collateral estoppel applies only to issues that have been necessarily and unambiguously decided, express factual findings are not required because an issue may be decided from findings implicit in the judgment." *Leventhal v. Schenberg (In re Leventhal)*, 481 B.R. 409, 420 (N.D. Ill. 2012).

Meier argues that Shrock presented limited information from the State Court case to support the Motion for Summary Judgment, and therefore this Court cannot properly apply collateral estoppel. Meier contends that Shrock failed to provide "all of the documents, testimony and evidence that was presented." (*Resp.*, at 8.) No example of what documents, testimony or evidence that should have been provided is given. Nor does Meier explain how any omitted documents would or could controvert a final order of the State Court that was supported by requisite findings.

Meier relies on *In re Tapper*, 123 B.R. 594 (Bankr. N.D. Ill. 1991) to support his conclusion. (*Resp.*, at 8.) In *Tapper*, the plaintiff and debtor stipulated to a certified transcript of the entire proceeding and all exhibits admitted in the State Court Action, excluding final arguments, and the court found it had the entire record before it. And in *Tapper*, summary judgment was granted as to the principal amounts entered in the state court pursuant to § 523(a)(2)(A).

In this case, certified copies of orders and transcripts from the state court proceeding, including jury instructions and interrogatories, were provided, even if the parties have not stipulated to any of the documents. While it is not the "entire" record, the judgment and all relevant documents needed for interpretation of the judgment have been provided. The entire record is not necessary here. Indeed, only the relevant documents that provide the state court's judgment and the facts supporting that judgment are needed to determine whether collateral estoppel is applicable.

To determine whether the elements of collateral estoppel have been satisfied in a dischargeability proceeding, the judge should look at the material parts of the record from the state proceeding, not just the judgment. *Tapper*, 123 B.R. at 600 (citing *Spilman v. Harley*,

656 F.2d 224, 228 (6th Cir. 1981)). As discussed below, the record of State Court proceedings here is adequate. It included: the State Court Complaint (*Stmt.*, Ex. 1), the State Court Answer (*Id.*, Ex. 2), State Court Order on Motion to Dismiss (*Id.*, Ex. 3), Injunction Order (*Id.*, Ex. 4), Transcript discussing Jury instructions (*Id.*, Ex. 5), State Court Order incorporating Jury Verdict (*Id.*, Ex. 6), State Court Judgment (*Id.*, Ex. 7), Counsel Appearance (*Id.*, Ex. 8), March 5, 2014 Jury Verdict (*Suppl.*, Ex. A), and Transcript of Proceedings on March 5, 2014 (*Suppl.*, Ex. B). All of these exhibits are attested to by an affidavit of John Xydakis, attorney for Shrock, or were certified copies or transcripts of those proceedings. Meier has not identified any missing essential document. Nor has Meier offered his own exhibits in support of his contention that the record is incomplete. Accordingly, the preclusive effect of that Judgment on the pending adversary litigation will be considered.

In an adversary proceeding to determine the nondischargeability of a debt, the burden of proof is on the plaintiff as to each element of the statutory exception to discharge by a preponderance of the evidence. *Grogan*, 498 U.S. 279; *In re Kreps*, 700 F.2d 372, 376 (7th Cir. 1983). Exceptions to discharge are construed strictly against the creditor and liberally in favor of the debtor. *In re Scarlata*, 979 F.2d 521, 524 (7th Cir. 1992) (citing *In re Zarzynski*, 771 F.2d 304, 306 (7th Cir. 1985)). The statute is to be narrowly construed so as not to undermine the Bankruptcy Code's purpose of giving the honest but unfortunate debtor a fresh start. *Park Nat'l Bank & Trust of Chicago v. Paul (In re Paul)*, 266 B.R. 686, 693 (Bankr. N.D. Ill. 2001).

Consequently, the question on summary judgment is whether Shrock and BSM can satisfy all elements of collateral estoppel with respect to each claim for nondischargeability. The facts on which the State Court Order and Judgment necessarily depended must demonstrate that the issues decided in the State court proceedings were identical to the elements of the §§ 523(a)(2)(A), (a)(4) or (a)(6) exception they seek to prove. Admissions from Meier's answer to the adversary complaints also may be considered. *Kriescher v. Gibson (In re Gibson)*, 521 B.R. 645, 652 (Bankr. W.D. Wis. 2014).

Meier and Shrock were both parties in the state proceeding. The Judgment entered
therein was final and, to this court's knowledge, has not been appealed. Whether the State
Court decided issues essential to its judgment that would determine issues pertinent to
nondischargeability under 11 U.S.C. §§ 523(a)(2)(A), (a)(4), or (a)(6) is discussed below.

### III. SHROCK'S ADVERSARY CLAIMS

Shrock's complaint was pleaded in three counts, seeking a determination that the debt
owed to it is nondischargeable pursuant to §§ 523(a)(2)(A), 523(a)(4) and 523(a)(6). The debt
at issue was alleged to have been determined, in part, by the jury verdict assessing punitive
damages against Meier for violating his fiduciary duties to Shrock prior to bankruptcy. As
noted before, the State Court later adopted the jury findings and entered judgment for
compensatory and punitive damages against Shrock for violating his fiduciary duties to
Shrock.

### A. Count I: § 523(a)(2)(A)

To establish that a debt is nondischargeable under § 523(a)(2)(A), a creditor must
establish that: (1) the debtor made a false representation of fact (2) which the debtor (a)
either knew to be false or made with reckless disregard for its truth and (b) made with an
intent to deceive; and (3) the creditor justifiably relied on the false representation. *See Baker
Dev. Corp. v. Mulder (In re Mulder)*, 307 B.R. 637, 643 (Bankr. N.D. Ill. 2004); *see also In re
Sheridan*, 57 F.3d 627, 635 (7th Cir. 1995). All three elements must be established and failure
to establish any one element is outcome determinative. *Glucona Am., Inc. v. Ardisson (In re
Ardisson)*, 272 B.R. 346, 357 (Bankr. N.D. Ill. 2001); *Bletnitsky v. Jairath (In re Jairath)*, 259 B.R.
308, 314 (Bankr. N.D. Ill. 2001).

As explained by Seventh Circuit precedent in *McClellan v. Cantrell*, 217 F.3d 890 (7th
Cir. 2000), § 523(a)(2)(A) has three distinct forms of conduct which can lead to
nondischargeability: false pretenses, false representation or actual fraud. A representation is
not necessary if actual fraud can be established; because actual fraud is broader than
misrepresentation, it can be defined as "any deceit, artifice, trick, or design involving direct
and active operation of the mind, used to circumvent and cheat another." *McClellan*, 217
F.3d at 893 (citing 4 Collier on Bankruptcy P 523.08[1][e], o. 523-45 (15th ed., Lawrence P.

King Ed., 2000)); *see also Husky Int'l Elecs., Inc. v. Ritz*, 136 S.Ct. 1581, 1586 (2016) ("The term "actual fraud" in § 523(a)(2)(A) encompasses forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation."). Thus, to establish fraud, the creditor must establish the following: (1) a fraud occurred; (2) the debtor intended to defraud the creditor; and (3) the fraud created the debt that is the subject of the discharge dispute. *McClellan*, 217 F.3d at 894. The fraud exception under § 523(a)(2)(A) does not reach constructive frauds, only actual ones. *Id.*

Any cause of action under § 523(a)(2)(A) – false pretenses, false representation or actual fraud – requires proof that the debtor acted with intent to deceive. *Pearson v. Howard (In re Howard)*, 339 B.R. 913, 919 (Bankr. N.D. Ill. 2006). Proof of intent to deceive is measured by the debtor's subjective intention at the time of the transaction in which the debtor obtained the money, property or services. *CFC Wireforms, Inc. v. Monroe (In re Monroe)*, 304 B.R. 349, 356 (Bankr. N.D. Ill. 2004). "Where a person knowingly or recklessly makes false representations which the person knows or should know will induce another to act, the finder of fact may logically infer an intent to deceive." *Jairath*, 259 B.R. at 315. Because direct proof of fraudulent intent is often unavailable, fraudulent intent may be inferred from the surrounding circumstances. *In re Kimzey*, 761 F.2d 421, 424 (7th Cir. 1985); *Rezin v. Barr (In re Barr)*, 194 B.R. 1009, 1020 (Bankr. N.D. Ill. 1996).

To satisfy the reliance element of § 523(a)(2)(A), the creditor must show that the debtor made a material misrepresentation that was the cause-in-fact of the debt that the creditor wants excepted from discharge. *Mayer v. Spanel Int'l Ltd. (In re Mayer)*, 51 F.3d 670, 676 (7th Cir. 1995) ("Reliance means the conjunction of a material misrepresentation with causation in fact."). Reliance on a false pretense, false representation or actual fraud under § 523(a)(2)(A) must be "justifiable." *Field v. Mans*, 516 U.S. 59, 74-75 (1995). Justifiable reliance is a less demanding standard than reasonable reliance and requires only that the creditor did not "blindly [rely] upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation." *Id.* at 71 (internal quotation omitted). Whether a party justifiably relies on a misrepresentation is determined by looking at the circumstances of a particular case and the characteristics of a

particular plaintiff, not by an objective standard. *Id.*; *Bombardier Capital, Inc. v. Dobek (In re Dobek)*, 278 B.R. 496, 508 (Bankr. N.D. Ill, 2002). "[A] person is justified in relying on a representation of fact 'although he might have ascertained the falsity of the representation had he made an investigation.'" *Mercantile Bank v. Canovas*, 237 B.R. 423, 429 (Bankr. N.D. Ill. 1998) (quoting *Field*, 516 U.S. at 70).

In this case, the evidence presented falls short of establishing the requisite level of intent necessary under § 523(a)(2)(A) to determine that Meier actually intended to defraud Shrock. Neither the State Court Order nor the adopted Jury Verdict contain sufficient findings to satisfy the elements necessary under § 523(a)(2)(A). Nor has Shrock proffered any additional evidence or affidavits to support the allegations that fraud created the debt that is the subject of the discharge dispute. To conclude that Meier intended to defraud Shrock would inevitably require the Court to weigh evidence and draw inferences from the allegations of the State Court complaint and the Judgment that are not expressly supported by the record. The State Court record does not deal with fraud. Instead, it focuses on a breach of fiduciary duty and the willful and wanton nature of that breach. Allegations that Meier obtained the funds through fraud or misrepresentations are therefore unsupported by the State court record.

Because Shrock has not demonstrated by a preponderance of the evidence that Meier had the requisite fraudulent intent, there can be no finding of false representation, false pretenses, or actual fraud for the purposes of dischargeability under § 523(a)(2)(A). Accordingly, summary judgment on Count I of his Complaint will be denied.

### B. Count II: § 523(a)(4)

Section 523(a)(4) bars the discharge of debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). In this case, Shrock does not specifically allege embezzlement or larceny. Accordingly, those elements will not be discussed. Shrock focuses on actions taken by Meier as fiduciary. To prevail, therefore, Shrock is required to prove that (1) "the debtor acted as a fiduciary to the creditor at the time the debt was created," and (2) "the debt was caused by fraud or defalcation." *Follett*

*Higher Educ. Group, Inc. v. Berman (In re Berman)*, 629 F.3d 761, 766 (7th Cir. 2011). Because fraud was considered above, the discussion below will focus on defalcation.

Defalcation is not a term defined by the Bankruptcy Code, but it "refers to the misappropriation of funds entrusted to one—a form of embezzlement. It differs from fraud in not requiring a false statement. 'Defalcation,' as commonly used . . . can encompass a breach of fiduciary obligation that involves neither conversion, nor taking and carrying away another's property, nor falsity." *Bullock v. BankChampaign, N.A.*, 133 S. Ct. 1754, 1760 (2013).

A threshold inquiry is whether an express trust or a fiduciary obligation runs from Meier to Shrock. The existence of an express trust or fiduciary relationship is tested under federal law standards. *O'Shea v. Frain (In re Frain)*, 230 F.3d 1014, 1017 (7th Cir. 2000). An express trust requires an explicit declaration of trust, a clearly defined trust res and intent to create a trust. *CFC Wireforms, Inc. v. Monroe (In re Monroe)*, 304 B.R. 349 (Bankr. N.D. Ill. 2004). However, a § 523(a)(4) cause of action can be based on a fiduciary relationship rather than one arising from an express trust. *See Frain*, 230 F.3d at 1017; *In re Marchiando*, 13 F.3d 1111, 1115-16 (7th Cir.1994). "A fiduciary relationship may arise separate from an express trust . . . but it is the substance and character of the debt relationship that determines whether such a fiduciary relationship exists." *Monroe*, 304 B.R. at 358.

Seventh Circuit precedent has held that a fiduciary relationship exists for purposes of § 523(a)(4) when there is "a difference in knowledge or power between fiduciary and principal which . . . gives the former a position of ascendancy over the latter." *Marchiando*, 13 F.3d at 1116; *see also In re Woldman*, 92 F.3d 546, 547 (7th Cir. 1996) ("[S]ection 523(a)(4) reaches only those fiduciary obligations in which there is substantial inequality in power or knowledge. . . ."). For example, a lawyer-client relationship, a director-shareholder relationship and a managing partner-limited partner relationship all require the principal to "'repose a special confidence in the fiduciary.'" *Frain*, 230 F.3d at 1017 (quoting *Marchiando*, 13 F.3d at 1116). However, not all fiduciary relationships fall within the purview of § 523(a)(4). *Woldman*, 92 F.3d at 547. A fiduciary relation qualifies under § 523(a)(4) only if it "imposes real duties in advance of the breach. . . ." *Marchiando*, 13 F.3d at 1116.

The Supreme Court has held that defalcation under § 523(a)(4) requires proof of "a culpable state of mind . . . involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." *Bullock*, 133 S. Ct. at 1757. This state of mind "must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a *gross deviation* from the standard of conduct that a law-abiding person would observe in the actor's situation." *Id.* at 1760 (emphasis in original) (quoting ALI, Model Penal Code § 2.02(2)(c), at 226 (1985)). This includes a risk that the debtor "must have recognized . . . yet forged ahead recklessly, acting in a way that amounted to a 'gross deviation' from the standards expected of an attorney in a fiduciary role." *Estate of Cora v. Jahrling (In re Jahrling)*, 816 F.3d 921, 927 (7th Cir. 2016) (finding that an attorney's violation of basic rules of professional conduct was a gross deviation that amounted to defalcation).

In this case, the State Court found that Meier violated his fiduciary obligations to Shrock. This breach was further found to be "willful and wanton." In applying collateral estoppel, this Court must determine whether Meier's fiduciary duties under Illinois law constitute a fiduciary duty under § 523(a)(4) and therefore decide whether "the issue sought to be precluded [is] the same as that involved in the prior action." *Klingman*, 831 F.2d at 1295.

Under Illinois law, a breach of fiduciary duty is "founded upon the substantive principles of agency, contract, and equity." *Khan v. Deutsche Bank AG*, 978 N.E.2d 1020, 1039 (Ill. 2012). "Some fiduciary relationships exist as a matter of law." *Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 782 (7th Cir. 2015). Others exist where "one party reposes trust and confidence in another, who thereby gains a resulting influence and a superiority over the subservient party." *Khan*, 978 N.E.2d at 1040; *see also Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 782 (7th Cir. 2015). Control is often a factor in determining the level of trust and influence. *See, e.g., Zurich Capital Mkts., Inc. v. Coglianese*, 332 F. Supp. 2d 1087, 1120 (N.D. Ill. 2004) (finding that plaintiff adequately pled count for breach of fiduciary duty by alleging control over assets). Thus, a fiduciary duty can be found where an insider exercises the "operating control" of the business. *In re Badger Freightways, Inc.*, 106 B.R. 971, 977, (Bankr. N.D. Ill.

1989); *see also Anest v. Audino*, 773 N.E.2d 202, 209 (Ill App. Ct. 2002) (citing *Kerrigan v. Unity Sav. Ass'n*, 317 N.E.2d 39, 43 (Ill. 1974)) (stating "[i]ndividuals who control corporations owe a fiduciary duty to their corporations and their shareholders"). Factors indicating that one assumed the role of a corporate fiduciary include making decisions concerning the termination of employees and executives. *Official Unsecured Creditors' Comm. of Hearthside Baking Co. v. Cohen (In re Hearthside Baking Co.)*, 402 B.R. 233, 247 (Bankr. N.D. Ill. 2009).

Following this reasoning, what is clearly implicit in the State Court's Order that Meier owed a fiduciary duty and breached it, was a determination that he had "influence and a superiority over" Shrock. An independent examination of the State Court Judgment substantiates the conclusion that Meier and Shrock stood in a relationship where there was substantial inequality of power in favor of Meier giving him a position of dominance over the Shrock. Meier controlled BSM, both by virtue of his majority (87.5% interest) as well as his position as president. He was in a position of control and superiority, whereby he owed a fiduciary duty to Shrock, an employee and a minority shareholder. Meier was also able to hire and fire employees, including various members of his own social circle. He was also able to change compensation levels of employees, including Shrock.

Meier had sole control over the financial information and was in a position where he could rebuff Shrock's attempts to obtain information as Meier denied Shrock access to certain records without prior payment of a viewer's fee. Shrock "could not even access basic information about day-to-day business activities-much less financial records" while Meier "retained 'sole access' to the computer with financial information about the business." *Catrambone v. Adams*, 498 B.R. 839, 848 (N.D. Ill. 2013). Meier was in a less powerful position than the minority shareholders in *Frain* who enjoyed at least "reasonably similar access" to information. *See Id.* (citing *Frain*, 230 F.3d at 1017). Thus, it is clear that Meier owed a fiduciary duty to Shrock within the meaning of § 523(a)(4).

In addition to demonstrating Meier was a fiduciary, the findings supporting the State Court Judgment also establish defalcation. Meier argues that the Jury's Verdict does not use or have any reference to the term "defalcation" and therefore collateral estoppel does not

apply. Meier also argues that no evidence of the Debtor's state of mind was submitted by Shrock to show the requisite culpability.

Defalcation is a federal law concept, so it is not surprising that the word was not used in the State Court case. However, it is not the word defalcation that is important, rather the facts supporting the State Court Judgment must demonstrate by a preponderance of the evidence that Meier committed defalcation.

Shrock and Meier agreed to form BSM from Baby Supermall, Inc. and further agreed that each would be entitled to compensation and distributions based on the Operating Agreement. Meier did not follow that Agreement. He distributed BSM's profits in a disproportionate manner by withholding distributions from Shrock and diverting profits through various employment contracts and incentive programs for himself and other closely related employees. The Operating Agreement between the parties did not provide for Meier increasing his salary by way of salary deferral or other incentive structures that were unilaterally implemented by Meier. Nor did the parties agree to provide shares of profits to various individuals hired by Meier, including his son, brother, lady friend and her son. Shrock also did not agree to reduce his own salary, or the distributions that he would have otherwise been entitled to.

Meier's actions constitute a gross deviation from the standard of care a fiduciary in his position would normally observe. The State Court litigation specifically evaluated Meier's conduct and found it to be a "willful and wanton" breach of fiduciary obligations owed by Meier to Shrock pursuant to the parties' Operating Agreement and Illinois law. For Meier to argue that this express finding does not amount to a "gross deviation" from the expectations of a fiduciary, as required by *Bullock* and *Jarhling*, is nonsensical.

In sum, Shrock established by a preponderance of the evidence a fiduciary relationship between himself and Meier and a debt caused by the Meier's defalcation while acting as a fiduciary. Therefore, summary judgment will be granted on Count II and dischargeability will be denied as to the debt owed by Meier to Shrock pursuant to § 523(a)(4).

### C. Count III: § 523(a)(6)

Section 523(a)(6) of the Bankruptcy Code provides that a debtor will not receive a discharge of any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity[.]" 11 U.S.C. § 523(a)(6). To prevail, a creditor must therefore prove three elements by a preponderance of the evidence: (1) that the debtor intended to and caused an injury; (2) that the debtor's actions were willful; and (3) that the debtor's actions were malicious. *See First Weber Grp., Inc. v. Horsfall*, 738 F.3d 767, 774 (7th Cir. 2013); *Baker Dev. Corp. v. Mulder (In re Mulder)*, 307 B.R. 637, 641 (Bankr. N.D. Ill. 2004).

An "injury" is a violation of another's legal right, for which the law provides a remedy. *Horsfall*, 738 F.3d at 774. The Seventh Circuit has recently described a willful and malicious injury as "one that the injurer inflicted knowing he had no legal justification and either desiring to inflict the injury or knowing it was highly likely to result from his act." *Jendusa-Nicolai v. Larsen*, 677 F.3d 320, 324 (7th Cir. 2012)

Specifically, willfulness requires "a deliberate or intentional injury, not merely a deliberate intentional act that leads to injury." *Id.* at 322 (quoting *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998)). The term 'willful' in § 523(a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. *Kawaauhau*, 523 U.S. at 61. Additionally, injuries either negligently or recklessly inflicted fall outside the scope of § 523(a)(6). *Kawaauhau*, 523 U.S. at 64. In other words, the debtor must have intended the tortious consequences of his act. *See id.*; *see also Berkson v. Gulevsky (In re Gulevsky)*, 362 F.3d 961, 964 (7th Cir. 2004). For purposes of § 523(a)(6), a plaintiff can establish "willfulness" by showing that the "debtor's motive was to inflict the injury . . . or the debtor's act was substantially certain to result in injury." *Horsfall*, 738 F.3d at 774 (internal citation omitted).

An act is "malicious" if it is taken "in conscious disregard of one's duties or without just cause or excuse. . ." *In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir. 1994) (internal quotations omitted). The test for maliciousness under § 523(a)(6) is (1) a wrongful act, (2) done intentionally, (3) which causes injury to the creditor and (4) is done without just cause and excuse. *Park Nat'l Bank & Trust*, 266 B.R. 686, 696 (Bankr. N.D. Ill. 2001).

Meier argues that § 523(a)(4) and (a)(6) are mutually exclusive and therefore he cannot be liable under both provisions. *See, e.g., Wachovia Sec., LLC v. Jahelka (In re Jahelka),* 442 B.R. 663, 672 (Bankr. N.D. Ill. 2010) (finding that § 523(a)(2) and (a)(6) are mutually exclusive). This reasoning is rooted in the fact that § 523(a)(6) is a general provision addressing a range of tortious conduct, while § 523(a)(4) is a specific one concerned only with breach of fiduciary duty and defalcation. It is well established that when two provisions govern a matter, the specific provision controls. *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 384–85 (1992). To allow otherwise would render the specific provisions of § 523 superfluous, and a statute should not be construed to render any provision superfluous. *In re Willett,* 544 F.3d 787, 792 (7th Cir. 2008). In particular, the subsections of § 523(a) should not be read to "obviate the need" for any other section. *Kawaauhau,* 523 U.S. at 62; *Jahelka,* 442 B.R. at 672.

However, courts have held that facts established in litigation a cause of action can meet the standard for both §§ 523(a)(4) and (a)(6). *See, e.g. WDH, LLC v. Sobczak-Slomczewski (In re Sobczak-Slomczewski),* Case No. 13 B 16661, 2014 WL 3844808 (Bankr. N.D. Ill. Aug. 5, 2014) (finding a debt nondischargeable under the larceny and embezzlement prong of § 523(a)(4) and also under § 523(a)(6)). The overlap between the sections of § 523 is "unavoidable" and courts should not be constrained by narrow definitions. *Husky Int'l Elecs., Inc.,* 136 S.Ct. at 1588.

Meier also argues that because the word "malicious" is not used by the Jury Verdict or the State Court Order, therefore the State Court Order cannot be used to bar relitigation under § 523(a)(6). The State Court Order found that the Debtor's conduct was "willful and wanton." Meier argues that "malicious" and "wanton" are not and cannot be synonymous.

The omission of the word "malicious" is in no way critical. Meier's behavior towards Shrock was indeed malicious under § 523(a)(6). Any judgment obtained because of willful and wanton misconduct "must be said to have been done 'willfully and maliciously' as contemplated by the [bankruptcy] statute." *Jendusa-Nicolai,* 677 F.3d at 324. In *Catrambone,* the court encountered similar wording in the jury findings and found that the case "[did] not require a careful parsing of the phrase 'willful and malicious injury' because the jury's finding

that his actions were "willful and wanton"—i.e., that [the] course of conduct showed an

'actual or deliberate intention' to harm . . . plainly satisfies the Section 523(a)(6) standard for

excluding a debt from discharge." *Catrambone*, 498 B.R. at 852. The Seventh Circuit has

found that jury findings of "willful and malicious" establish that the defendant acted

"knowing he had no legal justification and either desiring to inflict the injury or knowing it

was highly likely to result from his actions." *Id.* (citing *Jendusa-Nicolai*, 677 F.3d at 324).

Similarly, the State Court Order and Judgment established that Meier's actions were both

willful and malicious. Thus, Meier must have at least known that his actions would likely

injure Shrock.

Moreover, the factual issues leading to the State Court Jury's characterization (as

adopted by State Court Order and Judgment) of Meier's conduct as "willful and wanton" are

identical to the factual issues needed to resolve this case. Meier's argument that the State

Court record and the facts provided do not establish that Meier's actions were intended to

injure Shrock is unavailing. Meier argues that the record shows Shrock was injured and that

Meier intended his actions, but "willfulness" under § 523(a)(6) requires a deliberate or

intentional injury. Without this finding of intent, he argues, it is possible that the injuries

that Shrock suffered were just a mere result of Meier's intentional misbehavior. However,

this conclusion is inconsistent with jury findings as reflected in their responses to the Special

Interrogatories in the State court case. (*See Stmt.*, Exs. 6, 7.)

Meier's conduct, including the systematic marginalization of Shrock's monetary

interest in BSM and Meier's scheme to increase his own salary through salary deferments,

various guarantees and the hiring of his family members, among other acts, were both willful

and malicious as contemplated by § 523(a)(6). Meier argued that many of his actions were

authorized, but he has established no fact, documents or circumstances that establish that

these acts were done with a right or excuse. He is estopped from relitigating these issues in

this case, in light of the State court Order and Judgment.

Furthermore, the Seventh Circuit has specifically held that a debt with a punitive

judgment component is nondischargeable under § 523(a)(6). *Jendusa-Nicolai*, 677 F.3d at 323;

*see also Catrambone*, 498 B.R. at 852. The *Jendusa-Nicolai* opinion found that "punitive damages

are a debt owed by a tortfeasor to his victim, and . . . they are a debt consequent upon a willful and malicious injury." *Jendusa-Nicolai*, 677 F.3d at 323. The same logic applies to Shrock's claim for nondischargeability under § 523(a)(6). The $11,164,500 Judgment against Meier reflects both compensatory damages of $1,164,500 and $10,000,000 of punitive damages, and both are nondischargeable in this case.

Meier's conduct meets the "willful and malicious" standard of § 523(a)(6). Therefore, the entire judgment is nondischargeable under § 523(a)(6) for debts resulting from willful and malicious injuries. Shrock Motion for Summary Judgment will therefore be granted as to Count III.

## IV. BSM'S ADVERSARY CLAIMS

BSM's adversary complaint alleges that Meier used the company's money to buy himself a $700,000 house, pay attorneys' fees for his personal benefit, and otherwise took company assets to enrich himself and his immediate family. The BSM Motion for Summary Judgment contends that the State Court Judgment against Meier and in favor of Shrock is dispositive as to the adversary claims brought by BSM, but the Motion does not provide any argument or explanation of why Meier is estopped from disputing that a debt is owed by him to BSM, or how the amount of such alleged debt has been established by the State court judgment.

Because BSM did not obtain a judgment against Meier in State court, the amount or existence of such debt has not been established. BSM did not obtain a judgment determination as to the existence of debt assertedly due to it and therefore fails to meet the standard for collateral estoppel. *See Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005) ("Perfunctory or undeveloped arguments are waived."). While Meier might be estopped from relitigating factual issues involved in BSM's complaint to the extent such issues were determined in the State Court litigation between Shrock and Meier, the BSM Motion does not show how summary judgment on claims brought by BSM against Meier is independently warranted.

Accordingly, summary judgment will be denied with respect to claims brought by BSM in adversary proceeding 15-00198.

## CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment will be granted in part and denied in part in the Shrock Adversary Proceeding and denied entirely in the BSM Adversary Proceeding.  Separate orders and judgment will be entered accordingly.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated this _11th_ day of October, 2016